UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID M. TROGDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-01669-TWP-MJD |
| ) | |
| NANCY BERRYHILL, Acting Commissioner of ) | |
| the Social Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff David Trogdon ("Trogdon") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3) ("the Act"). For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

### I. BACKGROUND

**A. Procedural History**

Trogdon filed an application for Supplemental Security Income on November 1, 2012, alleging a disability onset of January 1, 2007[2] (Filing No. 13-2 at 16). His claims were initially denied on December 11, 2012, and again on reconsideration on February 11, 2013. *Id*. Trogdon filed a timely request for a hearing, which was held on February 18, 2014, before Administrative

---

[1] The Court has substituted Nancy Berryhill as the proper Defendant in this action, given that she became the Acting Commissioner of the Social Security Administration on January 23, 2017.

[2] Trogdon later amended his disability onset date to April 15, 2012. (Filing No. 13-2 at 16.)

Law Judge Tammy Whitaker ("the ALJ"). *Id.* The ALJ issued a decision on May 30, 2014, denying Trogdon's application. ([Filing No. 13-2 at 31](#).)

On July 17, 2014, Trogdon requested review by the Appeals Council, and submitted additional evidence for the Appeals Council's review. ([Filing No. 13-2 at 7](#); [Filing No. 13-2 at 10](#).) Among the new evidence submitted was the January 1, 2015 determination by Indiana's Medicaid Program ALJ Charlotte Callis which reversed the discontinuance of Trogdon's "Medical Assistance to the Disabled" allowing him to remain on Medicaid. ([Filing No. 13-6 at 89](#).) On September 17, 2015, the Appeals Council again denied Trogdon's request for review, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. ([Filing No. 13-2 at 2](#).)

**B.**     **Factual Background**

A few specific elements of Trogdon's medical history are relevant here, and the Court limits its discussion to those. At the time of his alleged disability onset, Trogdon was 45 years old and had at least a high school education. ([Filing No. 13-2 at 30](#).) The Vocational Expert, (the "VE") identified Trogdon's past work experience, before the onset of his disability, as deliverer, construction worker, carpenter, drywall installer, and painter. ([Filing No. 13-2](#) 29-30.) The ALJ found the VE's testimony that Trogdon would not be able to perform any of his past relevant work to be credible. *Id.*

Trogdon alleges the following impairments: myocardial infarction, coronary artery disease, sinus bradycardia, multiple arthralgias, bunions with foot pain, obstructive sleep apnea, lumbar spine pain, major depressive disorder, bipolar disorder, post-traumatic stress disorder ("PTSD"), tendonitis, hyperlipidemia, hypothyroidism, leg cellulitis, polyuria, cystitis, and hypotension.

([Filing No. 18 at 3](#).) He has sought treatment for depression, anxiety, and PTSD on a number of occasions, and has been diagnosed with recurrent depression and psychosis. ([Filing No. 13-8 at 7](#).)

On November 20, 2012, Dr. Ibrar Paracha ("Dr. Paracha") saw Trogdon for a consultative examination by a social security examiner. ([Filing No. 13-7 at 37](#).) Trogdon reported that he had not worked since April 2012 due to his chronic bilateral foot pain, bilateral knee paid, lumbar spinal pain, and bilateral shoulder pain. *Id.* Dr. Paracha noted that Trogdon was unable to do heel and toe walking due to the bunions on his feet; however, he could walk, squat, and get up from a squat without difficulty. *Id.* at 38. Dr. Paracha concluded that Trogdon's examination was positive for bilateral bunions, knee crepitus, and lumbar spinal pain, and that Trogdon would benefit from an evaluation by a podiatrist. *Id.* at 39.

On November 30, 2012, Wayne E. Hoye, Ph.D., HSPP ("Dr. Hoye"), saw Trogdon for a consultative psychiatric examination. ([Filing No. 13-7 at 40](#).) Trogdon reported that he had disabilities due to bipolar disorder, constant back pain, problems bending over, shoulder pain, bunions, and that he could not carry over five pounds. *Id.* He also reported seeing psychiatrists at Horizon House and Midtown Community Mental Health Center ("Midtown"). *Id.* at 41. At that time, Trogdon was homeless and reported a long history of significant psychosocial stressors, but that his mood had improved recently as he had experienced an increase in social support. *Id.* at 43. Dr. Hoye noted that Trogdon's performance on the cognitive portion of the mental status examination suggested intact performance on measures of concentration and relatively strong performance on verbal memory. *Id.*

Trogdon has a history of treatment at Midtown where he was diagnosed with major depressive disorder recurrent moderate, PTSD, nicotine dependence, alcohol abuse, and cannabis abuse. *Id.* at 68. Midtown reported that Trogdon's mental health greatly affected his ability to

function and relate to others in a positive manner and that his current treatment plan included talk therapy, medication, and case management services. *Id.* at 50.

On March 18, 2013, Trogdon was evaluated by Golda James, M.D. ("Dr. James"), at Wishard Hospital's Rheumatology Clinic. ([Filing No. 13-8 at 10](#).) Trogdon reported bilateral knee and shoulder pain. *Id.* Dr. James noted that the MRI of Trogdon's knees and the x-rays of his knees and shoulders were all negative. *Id*. Dr. James noted that Trogdon's physical examination revealed the following: full range of motion in the hips and bilateral knees, no swelling noted in the knees or ankles bilaterally, moderate bunion formation on first metatarsals bilaterally, and six tender points noted on examination day. *Id.* at 11.

At his February 2014 hearing, Trogdon testified that he has good days and bad days. On good days he can sit for an hour at one time and on bad days only thirty minutes; on good days he can stand for forty-five minutes at one time, and on bad days twenty minutes; on good days he can walk three or four blocks at one time, and on bad days he can only walk about a block. (Filing No. 17-2 at 15.)

On August 23, 2013, Trogdon was notified that his application for Medicaid benefits was approved. (Filing No. 13-6 at 79.) Thereafter, on December 1, 2014, he was notified that his Medicaid would be discontinued based on medical improvement. *Id*. at 82. Trogdon appealed the discontinuance and a Medicaid ALJ overruled the discontinuance, and found that he continued to meet the disability requirements of Indiana's Medicaid Program, effective January 1, 2015. (Filing No. 13-6 at 89.)

**C.**     **The ALJ's Decision**

Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ ultimately concluded that Trogdon was not disabled. ([Filing

4

No. 13-2 at 13.) At step one of the analysis, the ALJ found that Trogdon met the insured status requirements of the Act and had not engaged in substantial gainful activity[3] since his application date of November 1, 2012. *Id.* at 18. At step two, the ALJ found that Trogdon had the following severe impairments: history of non-ST segment elevation myocardial infarction type 1, coronary artery disease, status-post stent placement, history of sinus bradycardia, history of multiple arthralgias, hallux valgus or bunions with history of foot pain, obstructive sleep apnea, history of lumbar spine pain, major depressive disorder, depression, depression with psychosis, bipolar disorder, post-traumatic stress disorder, alcohol abuse, cannabis abuse, and polysubstance dependence. *Id.* The ALJ also found that Trogdon had the following non-severe impairments: history of tendonitis, hyperlipidemia, hypothyroidism, nicotine dependence, rash, leg cellulitis, polyuria, dysuria, upper respiratory infection, cystitis, and hypotension. *Id.* The ALJ found that Trogdon's fibromyalgia and personality impairments were not medically determinable impairments under the standards set forth by the Social Security Administration. *Id.* at 19. At step three, the ALJ found that Trogdon does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 19. The ALJ considered various listings, but ultimately found that Trogdon did not meet any of them. *Id.* at 19-23.

The ALJ concluded that Trogdon had the residual functional capacity to perform a range of light exertion work except that he can lift and/or carry twenty pounds occasionally and ten pounds frequently; sitting, standing, and walking a total of six hours in an eight hour work day; sit or stand for thirty minutes at a time provided that he is in a new position for at least five to ten

---

[3] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

5

minutes before resuming the prior position. *Id.* at 24. The ALJ found that Trogdon cannot operate foot controls, nor climb ladders, ropes, and scaffolds, but can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. *Id.* The ALJ noted that Trogdon's work experience is limited to unskilled tasks with no interaction with the public or a fast-paced production environment. *Id.* At step four, the ALJ determined that Trogdon is unable to perform any of his past relevant work. *Id.* at 29. At step five, the ALJ found that considering Trogdon's age, education, work experience, and Residential Functional Capacity ("RFC"), there are jobs that exist in significant numbers in the national economy that he can perform, thus he is not disabled for purposes of the Act from his alleged onset date through the date of the ALJ's decision. *Id.* at 30.

## II. **STANDARD OF REVIEW**

Under the Act, a claimant may be entitled to SSI only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

As detailed above, the Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

## III. DISCUSSION

Trogdon challenges two aspects of the ALJ's determination. ([Filing No. 18 at 9](#).) First, he argues the Appeals Council did not take into consideration new and material evidence when it denied his request to review the ALJ's decision based on additional evidence submitted from Medicaid. *Id.* Second, he argues the ALJ erred at step five because she erroneously dismissed his

7

limited activities of daily living and failed to account for his variable symptoms of good days and bad days preventing him from sustaining full time work.

## A. **The Appeals Council's failure to consider additional evidence was not error.**

Trogdon argues that the Appeals Council's failure to consider subsequent material evidence warrants remand. A claimant may seek review of an ALJ's decision by submitting additional evidence to the Appeals Council. 20 C.F.R. § 404. 970(b). The Appeals Council "consider[s] the additional evidence" only if the evidence is 1) "new," 2) "material," and 3) "relate[d] to the period on or before the date of the administrative law judge hearing decision." *Brown v. Colvin*, No. 1:14-cv-01797-JMS-JMD, 2015 WL 3886029 at *12 (S.D. Ind. June 22, 2015.) Evidence that meets this three-part test is deemed "qualifying" evidence. *Id.* at *13. After the evidence meets this threshold, the Appeals Council then proceeds to review the entire record, which includes exhibiting the "qualifying" evidence into the administrative record and determines whether the ALJ's decision is contrary to the weight of the evidence. *Id.* See *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir.2012). If the Appeals Council determines that the additional evidence fails any part of the three-part test outlined above, it "will prepare a denial notice" and [n]ot exhibit the evidence. *Brown*, 2015 WL 3886029 at *13 (*quoting* HALLEX I–3–5–20(A), 1993 WL 643143, at *1). Remand by the district court is appropriate only where new evidence is "material to the claimant's condition during the relevant time period encompassed by the disability application under review." *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989). The district court's standard of review for the Appeals Council's determination of additional evidence as "qualifying" is *de novo*. *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012).

Trogdon contends that his submission of additional evidence of a State of Indiana Medicaid determination that he was found disabled was new and material evidence that should have resulted

8

in the Appeals Council's review and remand of the ALJ's decision. The additional evidence stated that the discontinuance of Trogdon's "Medical Assistance to the Disabled" was reversed allowing him to remain on Medicaid. The Appeals Council did not consider this evidence, but considered other evidence which included two representative briefs and additional medical evidence from David L. Elwood, Ph.D.

The Commissioner contends that the Medicaid approval redetermination was not new or material. Evidence is "new" under § 405(g) only if it did not exist or was not available to Trogdon at the time of the ALJ proceeding. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). While the Medicaid redetermination was not available at the time of the ALJ's decision, the ALJ noted that she considered, but gave little weight, to the initial decision from Medicaid. The Commissioner argues that the Medicaid continuation determination was not new, and therefore "not qualifying" for review, because the ALJ knew and considered Trogdon's initial Medicaid approval notice dated August 23, 2013, and directly addressed the Medicaid approval notice in her decision.

The Court agrees that remand is not warranted because the Medicaid continuation notice was not new and material evidence that the Appeals Council was required to consider. The August 23, 2013 notice is included in the list of exhibits that were part of the administrative record when the ALJ issued her decision. (Filing No. 13-2 at 34.) In the May 30, 2014 decision, the ALJ stated "I also considered but have given little weight to the decision from a different entity that the claimant was approved for Medicaid." (Filing No. 13-2 at 29.) After the ALJ issued her decision, Trogdon submitted to the Appeals Council a favorable decision from a Medicaid ALJ which stated that he continued to meet the disability requirements for Medicaid and his benefits would continue. (Filing No. 13-6 at 81-90.) The Appeals Council followed the proper procedures under the Social

9

Security regulations, in exhibiting only "qualifying" evidence that was new and material. The Appeals Council did not consider the Medicaid continuation notice, because it found the notice to be "not qualifying," therefore it was not required to make the notice part of the administrative record for its review.

The facts in this case are distinct from those in *Farrell*. Unlike in *Farrell*, where the ALJ acknowledged not considering a fibromyalgia impairment and the plaintiff subsequently submitted new evidence of a fibromyalgia diagnosis to the Appeals Council, here the ALJ considered evidence of an initial Medicaid approval notice. The subsequent evidence Trogdon submitted regarding the continuance of his Medicaid confirmed what the ALJ knew and was not new and material evidence before the Appeals Council. The Appeals Council's denial of review was not an error of law.

B. **The ALJ's credibility determination regarding Trogdons' activities was not patently erroneous.**

The Social Security regulations require an ALJ to consider a claimant's activities of daily living when assessing credibility of the claimant's alleged symptoms. Trogdon argues the ALJ erred because she dismissed his limited activities and failed to account for his variable symptoms with both good and bad days which prevented him from sustaining work. Trogdon testified that his daily activities included going to Horizon House to eat, obtain medicine, shower, and occasionally go to the library. He also testified that he has good days where he is able to do what he needs to do and bad days when he cannot move at all.

The ALJ's credibility determination is a two-step process. According to Social Security Ruling 96-7p, the ALJ must first determine whether there is a medically determinable impairment which could reasonably be expected to produce the pain or other symptoms alleged, and second, the ALJ must evaluate the intensity and persistence of the symptoms and determine the extent to

which the symptoms limit the claimant's capacity for work. Whenever the claimant's statements about the intensity, persistence, or functionally limiting effects of symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. SSR 96-7p; 20 C.F.R. § 404.1529(c)(4). The factors that the ALJ must consider when assessing the credibility of a claimant's statements include the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate the symptoms; any measures other than treatment the claimant uses or has used to relieve symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to symptoms. SSR 96-7p; 20 C.F.R. § 404.1529(c)(3).

Because credibility is largely a factual determination, and because the ALJ is able to perceive witness testimony firsthand, the court will not upset credibility determinations so long as there is some support in the record and the ALJ is not "patently wrong." *Herron*, 19 F.3d at 335; *see Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (credibility findings are afforded "considerable deference" and can only be overturned if they are unreasonable or unsupported). "When assessing an ALJ's credibility determination, [the court does not] undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, [the court] merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder*, 529 F.3d at 413. Only when the ALJ's determination lacks any explanation or support will the court determine that her credibility determination is "patently wrong" and requires reversal. *Id.*

The ALJ found that Trogdon's medically determinable impairments could reasonably be expected to cause his alleged symptoms. ([Filing No. 13-2 at 25](Filing No. 13-2 at 25)). However, the ALJ found that

11

Trogdon's statements regarding the severity of his symptoms were not entirely credible due to a number of factors. The ALJ stated that regarding Trogdon's physical impairments, the objective medical findings did not support Trogdon's alleged subjective severity and limitations. *Id.* Regarding Trogdon's mental impairments, the ALJ noted that his mental impairments would not preclude the performance of work at the modest residual functional capacity since he received a Global Assessment of Functioning score of 55. The ALJ noted that even if Trogdon's limitations are as limited as he alleged, that his degree of limitations are more directly related to his living situation, rather than a medical condition in light of the weak medical evidence and testimonies that many impairments had improved. *Id.* at 29.

Trogdon argues that the ALJ erroneously dismissed his limitations caused by his symptoms on his daily living activities, and that sporadic physical activity of good and bad days does not indicate that an individual is capable of full-time work. While it is true that activities of daily living alone are not substantial evidence that would undermine a claimant's subjective complaints about pain or other symptoms, *Clifford*, 227 F.3d 863, 872 (7th Cir. 2000), the ALJ does not solely cite to Trogdon's daily activities as a basis for her credibility determination. The ALJ's opinion indicates that she considered the record as a whole in making a credibility determination, and the Court finds that the ALJ provided adequate support and explanations for her conclusion. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (credibility determination upheld where it was based upon "a variety of facts and observations"). Thus, the Court finds that the ALJ's credibility determination is not patently wrong.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the final decision of the Commissioner is **AFFIRMED** and Trogdon's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 9/11/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov